## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SONNIE G. BATES | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 11-1589 (RCL) |
| | ) |
| MICHAEL B. DONLEY, Secretary of | ) |
| the Air Force, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Sonnie Bates sues Michael Donley, Secretary of the Air Force ("Secretary" or "defendant"), seeking review of the Air Force Board for the Correction of Military Records' ("AFBCMR" or "Board") decision not to correct or remove disciplinary records from plaintiff's file. Plaintiff was an Air Force Major who in 1999 refused an order to take an anthrax vaccine because of concerns about its health effects. In 2000, facing continuing disciplinary proceedings, plaintiff resigned from the Air Force, receiving a general (under honorable conditions) discharge.

Beginning in 2003, Judge Emmet Sullivan of the U.S. District Court for the District of Columbia heard a case, *Doe v. Rumsfeld*, regarding the legality of the military's anthrax vaccine program. Judge Sullivan prospectively enjoined the armed forces from administering the vaccine until the Food and Drug Administration ("FDA") completed proper rulemaking. Before the D.C. Circuit could rule on the merits of Judge Sullivan's order, the FDA enacted a valid final rule that dissolved Judge Sullivan's injunction. Plaintiff was not a party to this case, and Judge

Sullivan did not order any retrospective or declaratory relief.  Other courts have come to different conclusions as to the vaccine's legality.

In November 2008, plaintiff submitted an application to the AFBCMR, seeking correction of his records in light of *Doe*.  After receiving seven advisory opinions and considering plaintiff's submissions, the AFBCMR denied plaintiff's request to change his disciplinary and personnel records.  Thereafter, plaintiff brought suit in this Court, challenging the actions of the AFBCMR.

Before the Court is defendant's Motion to Dismiss, Jan. 31, 2012, ECF No. 5.  Upon consideration of the defendant's motion; the plaintiff's Opposition, Apr. 16, 2012, ECF No. 8; the defendant's Reply thereto, May 7, 2012, ECF No. 10; the applicable law; and the record herein, the Court shall convert defendant's motion into a motion for summary judgment under Federal Rule of Civil Procedure 12(d), and grant defendant summary judgment.

## I.     BACKGROUND

For the purposes of this Opinion, the Court takes as true the facts alleged in plaintiff's Complaint.  *See*, *e.g.*, *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Furthermore, when faced with a motion to dismiss in the APA context, a court may consider the administrative record and public documents without converting the motion into a motion for summary judgment, *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009), or it may convert the motion into a motion for summary judgment under Rule 12(d), *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 & n. 5 (D.C. Cir. 1993).  Therefore, the Court draws the background facts from plaintiff's Complaint and the submitted administrative record.  Pl.'s Compl., Sept. 2, 2011, ECF No. 1; Admin. Record of Proceedings Before AFBCMR ("AR"), Nov. 8, 2011, ECF Nos. 5-1–6.

A.      **Factual Background to the Anthrax Vaccination Program**

In December 1997, the Department of Defense ("DoD") initiated the Anthrax Vaccine Immunization Program ("AVIP").  Compl. ¶ 11.  The program went into effect in March 1998, and under the AVIP, members of the Armed Forces at risk of anthrax exposure were required to submit to mandatory vaccination.  *Id.* ¶¶ 11, 13.

Through this program, the DoD administered a vaccine known as Anthrax Vaccine Absorbed ("AVA").  *Id.* ¶ 13.  In 1970, the National Institutes of Health ("NIH")—the agency responsible for licensing biologic products at the time—licensed AVA for use against anthrax. In 1972, Congress transferred responsibility for licensing biologics to the Food and Drug Administration ("FDA").  *See* AR 99 (*Anthrax Vaccine Safety and Efficacy Issues: Hearing Before the H. Comm. on Gov't Reform*, 106th Cong. 1 (1999) (statement of Kwai-Cheung Chan, Dir., Special Studies & Evaluations, Nat'l Sec. & Int'l Affairs Div., GAO)).  After notice and comment rulemaking, the FDA issued a final order explicitly finding AVA efficacious against inhalation anthrax in December 2005.  *See* Compl. ¶ 50.

In 1998, Congress passed 10 U.S.C. § 1107, restricting the administration of investigational or unapproved drugs to military personnel.  Under the law, the DoD may not require a member of the armed services to receive an "investigational new drug or a drug unapproved for its applied use," 10 U.S.C. § 1107(a)(1), without the informed consent of the service member or a presidential wavier, 10 U.S.C. § 1107(f)(1).  Pursuant to this law, in September 1999 the President signed Executive Order 13139, stating that "[b]efore administering an investigational drug to members of the Armed Forces, the…[DoD] must obtain informed consent from each individual unless the Secretary can justify to the President a need for a waiver of informed consent[.]"  64 Fed. Reg. 54,175 (Sept. 30, 1999).  According to the plaintiff, the

DoD did not secure informed consent of service members or seek a Presidential wavier before administering AVA.  *See*, *e.g.*, Compl. ¶ 53.

**B.      Plaintiff's Refusal to Take the Anthrax Vaccine and Related Discipline**

Plaintiff Sonnie Bates entered the active duty Air Force in September 1986 as a Second Lieutenant; by April 1998, plaintiff achieved the rank of Major.  Compl. ¶ 8.  Plaintiff states that he had "amassed an exemplary military record as both an aviator and officer," Pl.'s Opp'n 5.  He cites an impressive record of accomplishments, commendations, and awards.  Compl. ¶¶ 9–10.

In October 1999, the plaintiff told his squadron commander at the Dover Air Force Base, Lt. Col. David Smith, that he was considering not taking the anthrax vaccine.  His opposition was based on his observations of sick squadron personnel.  At that time, the Air Force required all personnel training to become a C-5 pilot, including the plaintiff, to take the anthrax vaccine. Lt. Col. Smith advised the plaintiff to share his concerns with the Wing Flight Surgeon and Area Defense Counsel.  AR 163; Compl. ¶ 22.

On November 8, 1999, Lt. Col. Smith told plaintiff that he would be expected to take the vaccination before his first operational mission.  On November 16 and 17, plaintiff advised the squadron Readiness Flight Commander and the Squadron Director of Operations that he decided not to take AVA.  On November 18, plaintiff submitted a request for resignation under Air Force Instruction ("AFI") 36-3207, *Separating Commissioned Officers*.  On the same date, the plaintiff gave his Squadron Director of Operations a letter stating that he had completed all training requirements except the anthrax vaccination, and explained his lingering concerns over the product quality and safety of the AVA.  AR 163; Compl. ¶¶ 24–26.

On November 19, 1999, the plaintiff was removed from his next operational mission because of his failure to take the anthrax immunization.  On November 22, Lt. Col. Smith

counseled plaintiff on his failure to be "mission ready," removed him from all squadron duties, assigned plaintiff to the Operations Group, and ordered the plaintiff to meet with the Flight Surgeon, chaplain, and his military defense attorney.  AR 163; Compl. ¶¶ 27–28.  The next day, Lt. Col. Smith met with plaintiff and plaintiff's spouse; during that meeting, Lt. Col. Smith asked plaintiff to put his objections to the AVIP in writing, and told plaintiff that he would try to educate him further regarding his concerns.  On November 24, plaintiff submitted a two-page letter detailing his objections to the AVIP.  On November 30, plaintiff met with Col. Harvey R. Crowder, Chief, Preventative Division, Air Force Medical Operations Agency, to discuss his concerns.  AR 164; Compl. ¶¶ 29–31.

On December 1, 1999, plaintiff was given a written order to be inoculated with the anthrax vaccine by December 3rd.  In response, plaintiff submitted a letter from Dr. J.B. Classen advising plaintiff not to take the vaccine.  Dr. Classen based his advice on a review of plaintiff's family history and his research on autoimmunity.  Plaintiff went to Andrews Air Force Base on December 3 to meet with Col. Bernardo Villacis, Senior Consultant, Allergy Clinic, and discussed the assertions Dr. Classen made in his letter.  After plaintiff returned from Andrews AFB without taking the vaccine, Lt. Col. Smith told plaintiff that an on-call medic would be available throughout the weekend if plaintiff changed his mind.  AR 164; Compl. ¶¶ 32–33.

Plaintiff did not take the vaccination, and on December 8, 1999, Brigadier General F. Randall Starbuck, Air Force Vice Commander, offered plaintiff a Uniform Code of Military Justice ("UCMJ") Article 15 (nonjudicial punishment) for willfully disobeying a lawful order to take the AVA.  Plaintiff initially elected trial by court-martial, but later waived his right to a UCMJ Article 32 hearing and submitted a request to change his election and accept the offer of

nonjudicial punishment.  Plaintiff also requested, and was granted, a personal hearing with Brigadier General Starbuck.  AR 164; Compl. ¶¶ 34–36.

On February 21, 2000, plaintiff submitted a response to the Article 15 proceedings. Plaintiff stated that he believed that the anthrax vaccine was unsafe and linked to illness.  On November 28, Brigadier General Starbuck determined that plaintiff had committed the offense, and imposed punishment consisting of forfeiture of $3200 in pay and the placement of a Letter of Reprimand in plaintiff's official file.  Plaintiff did not appeal this decision.  On March 9, 2000, a legal review found the nonjudicial punishment legally sufficient, and an additional supervisory review concurred.  AR 164; Compl. ¶¶ 37–38.

On March 8, 2000, the Air Force notified plaintiff of an action initiated under AFI 36-3206, *Administrative Discharge Procedures for Commissioned Officers*, for commission of a serious offense under UCMJ Article 90, specifically for willfully disobeying the lawful command of a superior officer.  On March 10, plaintiff submitted AF Form 780, *Officer Separation Actions*, tending his resignation per AFI 32-3207 because he could not support the AVIP.  On March 30, plaintiff was discharged per AFI 36-3206 with a general (under honorable conditions) discharge and a separation code of BKQ (indicating "misconduct—commission of a serious offense").  Plaintiff did not appeal his discharge characterization or separation code.  *See* AR 164; Compl. ¶¶ 39–42.

## C.     Later Proceedings and Challenges

A few years after plaintiff left the Air Force, Judge Emmet Sullivan of the United States District Court for the District of Columbia heard a legal challenge to the AVIP.  In *Doe v. Rumsfeld* ("*Doe I*"), 297 F. Supp. 2d 119, 135 (D.D.C. 2003), Judge Sullivan ruled that, with regard to immunization from inhalation anthrax, AVA was an investigational drug being used for

an unapproved purpose in violation of 10 U.S.C. § 1107.  Judge Sullivan found that the FDA had not properly licensed the AVA for use against inhalation anthrax.  He then granted the *Doe* plaintiffs' request for a preliminary injunction and enjoined the AVIP.  *Id.*

Shortly after the *Doe I* injunction, the FDA issued a final rule and order finding that AVA was safe and effective "independent of the route of exposure."  69 Fed. Reg. 255, 260 (Jan. 5, 2004).  Judge Sullivan, nonetheless, vacated the FDA's rule and order because the FDA failed to follow the required notice and comment procedures.  *Doe v. Rumsfeld* ("*Doe II*"), 341 F. Supp. 2d 1, 16 (D.D.C. 2004).  Finding a clear statutory prohibition on inoculation with investigational drugs, Judge Sullivan issued a permanent injunction on AVIP until the FDA certified AVA through the proper procedures.  *Id.* at 16.  In December 2005, the FDA issued a new final order explicitly finding AVA efficacious against inhalation anthrax, causing the D.C. Circuit to conclude that the injunction against the vaccination program had dissolved on its own terms. *Doe v. Rumsfeld* ("*Doe IV*"), 172 Fed. Appx. 327, 327 (D.C. Cir. 2006).

After the *Doe* litigation put the legality of the AVIP in doubt, plaintiff sought relief from the Air Force Board for the Correction of Military Records.  On November 8, 2008, plaintiff submitted an application to the AFBCMR requesting several changes be made to his Air Force file, in order to correct for the perceived injustice of being disciplined for refusing to take the AVA.  Compl. ¶¶ 52–53; AR 14–15.  The plaintiff, relying on *Doe* and a later case, *Rempfer v. AFBCMR*, 538 F. Supp. 2d 200 (D.D.C. 2008), argued that "from the time [he] was punished and separated from the Air Force in 2000 – until December 2005 – an order to submit to the anthrax vaccination was illegal!"  AR 18.

Following plaintiff's submission, the Board forwarded his application for seven advisory opinions.  Compl. ¶ 56.  The seven advisory opinions all recommended denying plaintiff's

request.  *See id.* ¶¶ 57–63.  The Board received a legal opinion by the Air Force Legal

Operations Agency, Military Justice Division ("AFLOA/JAJM" or "JAJM").  The JAJM

advisory opinion thoroughly considered plaintiff's arguments based on *Rempfer* and *Doe*.  First,

the opinion distinguished *Rempfer*, which plaintiff argues elaborates on *Doe* and makes clear that

pre-2005 orders to take the AVA were illegal.  The JAJM opinion noted that the *Repmfer* court

"pointed out that 'other courts have affirmed the legality of pre-2005 orders subjecting military

personnel to involuntary anthrax vaccination,'" AR 166 (quoting *Rempfer*, 538 F. Supp. 2d at

210), and that the *Rempfer* court did not take a position on whether the AFBCMR should

consider itself bound by *Doe v. Rumsfeld*, AR 166.

Next, the JAJM opinion distinguished *Doe*, noting that *Doe* only concerned prospective,

injunctive relief and did not concern whether prior inoculation orders were illegal.  AR 166–67.

JAJM found more persuasive the holding of the Court of Appeals for the Armed Forces in

*United States v. Kisala*, 63 M.J. 50 (C.A.A.F. 2006).  *Kisala*, according to the JAJM, "spoke

directly to the issue raised by the applicant."  AR 166.  In *Kisala*, an army specialist refused a

written order to take the AVA.  Explaining its reliance on *Kisala*, the JAJM opinion stated:

> The Court in *Kisala* described how it had long ago "recognized the foundational
> principle of military discipline…obedience to lawful orders."  *Kisala* at 51.  It
> pointed out that "an order is presumed to be lawful, and a subordinate disobeys an
> order at his own peril."  *Id.* at 52.  The Court then summarized the specialist's
> challenge as trying to "overcome [the] presumption of the lawfulness of the order
> to receive the vaccine."  *Id.*…
>
> Just as applicant did indirectly through the *Rempfer* case, the specialist [in *Kisala*]
> relied upon *Doe* to show that the AVA was not lawful for use as intended by the
> AVIP.  The *Kisala* Court pointed out that, in dealing with the presumption that an
> order is lawful, the service member challenging the order bears the burden of
> demonstrating the illegality.  *Id.* at 53.  After analyzing the licensing process for
> the vaccination and pointing out that the burden on the service member
> challenging the rule from the FDA is high, the Court found that the specialist had
> not established that the vaccine is an investigational new drug or a drug
> unapproved for its applied use.  *Id.* at 54–55.  Therefore, use of the AVA did not

require a presidential waiver of informed consent to be used on military members. The Court concluded that the specialist had failed to overcome the presumption of the lawfulness of the orders and, therefore, it affirmed the findings and sentence as adjudged. *Id.*

The facts in *Kisala* and the applicant's case are identical except for the fact that the applicant did not face a court-martial for his offense and received much less serious consequences because of that fact. A ruling of the Court of Appeals of the Armed Forces is binding on all courts-martial and other military justice actions for all armed services. Therefore, since the applicant has used the same argument as the specialist in *Kisala*, the same outcome for the applicant's case must result from applying the reasoning used in *Kisala* on applicant's situation. The applicant has not overcome the presumption of lawfulness of the order he was given on 3 December 1999. Therefore, the Article 15 based on failure to obey that order is legally sufficient

The applicant has cited to *Rempfer*, which was decided after *Kisala*. However, *Rempfer* is not on point for the applicant's case since it does not directly address the issue of the presumption of the lawfulness of the order given to the applicant. Moreover, even if the rulings in *Kisala* and *Rempfer* were in exact opposition to one another, military legal authorities would be bound to follow the *Kisala* decision unless and until that decision was overturned or overruled by the Court of Appeals of the Armed Forces or the United States Supreme Court.

AR 167. Therefore, the JAJM recommended denial of plaintiff's application.

On August 14, 2009, the AFBCMR forwarded the advisory opinions to plaintiff and gave him 30 days from the date of the letter to comment on the advisory opinions or provide any additional evidence. Compl. ¶ 64. The plaintiff responded to the JAJM's advisory opinion, arguing that *Kisala* did not "somehow trump[] the decision of a Federal District Court – a court of competent jurisdiction which construed the legality of the AVIP program." AR 185. He reiterated his arguments based on *Doe* and *Rempfer*. He argued that the Court of Appeals for the Armed Forces, which issued *Kisala*, "is neither an appellate court to which the Federal District Court must answer, nor is it competent to rule on the legality of FDA regulations nor any Executive Orders as they pertain to FDA regulations." *Id.*

In early 2010, the Board requested and received two supplemental advisory opinions. *See* Compl. ¶¶ 66–67.[1]   The supplemental JAJM opinion again recommended denial of plaintiff's application, and responded to plaintiff's rebuttal argument about *Kisala* not "trumping" *Doe*:

> It may be true that the Court of Appeals for the Armed Forces does not "trump" a Federal District Court.   It is also true that a Federal District Court does not "trump" the Court of Appeals for the Armed Forces on questions of military law. We remain convinced that the order was lawful within the body of mandatory military law precedents that we must follow in our military justice system.
>
> \*                    \*                    \*
>
> The failure of the FDA to properly authorize the use of the vaccine—a fact not known to either the commander or the applicant at the time of the order, did not invalidate the order at the time it was given to the applicant.   The fact that a subsequent revelation of improper rulemaking interrupted the administration of the vaccine program until the rulemaking was properly completed had no impact on the legality of the order.

AR 179–80.   The Board asked the Judge Advocate General of the Air Force ("JAA") for a supplemental opinion on "the extent of the remedies requested by the applicant assuming the disciplinary action is removed from the records."   *See* AR 189.   However, instead of providing an opinion on that issue, the JAA responded:   "We emphatically do not, and cannot responsibly discuss—even hypothetically—a remedy for which there is absolutely no underlying error or injustice."   *Id.*   The JAA then proceeded with a fervent analysis "as to why this applicant's request must be denied in its entirety."   *Id.*   The JAA opinion specifically responded to plaintiff's reliance on *Doe* and *Rempfer* and noted that a "variety of pre-*Doe v. Rumsfeld* authorities [ ] concluded the AVIP was legal."   AR 191 (citing *Mazares v. Dep't of the Navy*, 302 F.3d 1382,

---

[1] Plaintiff presents an extended discussion, in paragraphs 68–72 of his Complaint, regarding the Board's concerns about completing its investigation within the allotted 18-month period, giving the plaintiff 30 days to respond to revised advisory opinions, and completing the process before the Board's next scheduled meeting.   This discussion is irrelevant.   Plaintiff admits that the "date of the panel was subsequently postponed due to availability issues" and concerns about procedural irregularity or giving the plaintiff enough time to respond were made "moot."   Compl. ¶ 72.   Plaintiff does not seem to argue seriously that the AFBCMR's decision was procedurally defective.

1385 (Fed. Cir. 2002); *O'Neil v. Sec. of the Navy*, 76 F. Supp. 2d 641, 645 (W.D. Pa. 1999)). The JAA also stated that the *Kisala* decision was more on point than *Doe*, since *Kisala* actually addressed the presumption that military orders are legal. *Id*.

By letter dated April 16, 2010, the plaintiff responded to the JAJM and JAA supplemental opinions. Compl. ¶ 77. In that letter, the plaintiff called the supplemental opinions "unresponsive, argumentative, and wholly improper and irresponsible." AR 198. He reiterated his arguments that the Board should follow *Doe* and *Rempfer* rather than *Kisala*. AR 198–203.

The AFCMR convened on April 23, 2010, and denied plaintiff's application. Compl. ¶ 80. The Board relied on advisory opinions, detailed *supra*, when it concluded that "[i]nsufficient relevant evidence has been presented to demonstrate the existence of an error or injustice." AR 10. The plaintiff then brought suit in this Court, challenging the decision of the AFBCMR under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. Complaint, Sept. 2, 2011, ECF No. 1. The Court now considers the defendant's Motion to Dismiss, Jan. 31, 2012, ECF No. 5.

## II. LEGAL STANDARD

The defendant has moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). However, Rule 12(d) provides that "if, on a motion under Rule 12(b)(6)…, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Because the parties have relied on material outside the pleadings (namely, the administrative record), the Court deems it appropriate to treat the defendant's motion to dismiss as a motion for summary judgment. *See Shalala*, 988 F.2d at 1226 & n.5 (noting that a district court considering a Rule 12(b)(6) motion

"can consult the [administrative] record to answer the legal question[s] before the court," but that "[i]t is probably the better practice for a district court always to convert to summary judgment.").

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977). Due to the court's limited role in reviewing the administrative record, the typical summary judgment standards of Rule 56 are not applicable. *Stuttering*, 498 F. Supp. 2d at 207. Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)).

## III.    ANALYSIS

The Court considers two arguments for granting defendant summary judgment. First, the defendant challenges the action as time-barred under the law of the Federal Circuit, which defendant says has exclusive appellate jurisdiction over the case since the Complaint is based in part on the Little Tucker Act. The guidance from the D.C. Circuit is not clear on this point, and the Court will proceed to consider plaintiff's claims under the APA—although an appellate court may find this first argument a sufficient grounds for dismissal.

Second, when the Court considers plaintiff's APA challenge, the facts do not indicate that the AFBCMR's decision was arbitrary, capricious, or unlawful. The Court should apply a strongly deferential application of the arbitrary and capricious standard to decisions of the

AFBCMR. However, even under "standard" APA deference, the well-reasoned and thorough decision of the AFBCMR withstands judicial review

The Court notes at the outset the similarity between this case and a recently decided case before Judge Reggie Walton. In *Martin v. Donley*, 886 F. Supp. 2d 1, 5–6 (D.D.C. 2012), plaintiff Martin was a former member of the Air Force reserves who refused to take the anthrax vaccination in 2000. The Air Force initiated discharge procedures against Martin for willfully disobeying a lawful order, and Martin resigned facing involuntary discharge. In 2008, Martin challenged his discharge designation before the AFBCMR, claiming the inoculation order was illegal under *Doe v. Rumsfeld*. When the AFBCMR denied Martin's request, he challenged this action in the U.S. District Court for the District of Columbia. *Id*. at 5–7. Judge Walton decided that the AFBCMR came to a reasoned decision and was entitled to summary judgment.

*Martin* and the present case are virtually identical. In both cases, the same lawyers have represented each side—resulting in substantial similarities in the briefs.[2] The actions were filed on the same day and bear consecutive case numbers. *Compare* Complaint, Sept. 2, 2011, No. 11-cv-1590 (*Martin*), ECF No. 1, *with* Complaint, Sept. 2, 2011, No. 11-cv-1589 (*Bates*), ECF No. 1. The facts, in all important aspects, are indistinguishable. The plaintiff, when asking the AFBCMR and this Court to follow *Doe* instead of *Kisala*, stressed the importance of following the legal and factual findings of the United States District Court for the District of Columbia. *See*, *e.g.*, Pl.'s Opp'n 31 ("Considering that *Kisala*'s holdings directly contradict…rulings by

---

[2] The filings in the two cases repeat verbatim many of the same legal arguments, and all of the key filings in the cases were filed around the same day. *Compare* Complaint, Sept. 2, 2011, No. 11-cv-1590 (*Martin*), ECF No. 1, *with* Complaint, Sept. 2, 2011, No. 11-cv-1589 (*Bates*), ECF No. 1; *compare* Def.'s Mot. to Dismiss, Feb. 3, 2012, No. 11-cv-1590 (*Martin*), ECF No. 4, *with* Def.'s Mot. to Dismiss, Jan 31, 2012, No. 11-cv-1589 (*Bates*), ECF No. 5; *compare* Pl.'s Opp'n to Def.'s Mot. to Dismiss, Apr. 16, 2012, No. 11-cv-1590 (*Martin*), ECF No. 7, *with* Pl.'s Opp'n to Def.'s Mot. to Dismiss, Apr. 16, 2012, No. 11-cv-1579 (*Bates*), ECF No. 8; *compare* Def.'s Reply, May 7, 2012, No. 11-cv-1590 (*Martin*), ECF No. 9, *with* Def.'s Reply, May 7, 2012, No. 11-cv-1590 (*Martin*), ECF No. 9.

The commonality of counsel does not mean *Martin* has any preclusive or *res judicata* effect in the present case. But it enhances the similarities between *Martin* and *Bates*. Not only do the two cases have virtually indistinguishable facts, Judge Walton considered many of the same legal arguments when he decided *Martin*.

Article III courts competent to decide such issues as the legality of the Vaccine…it was not reasonable for the AFBCMR to ignore federal court precedent and adopt the CAAF case."). While plaintiff is wrong about the precedential effect of district court opinions, he is right to suggest that the well-reasoned holdings of a colleague have a strong persuasive effect. Therefore, this Court is guided by Judge Walton's sound approach in *Martin* and will come to the same result for many of the same reasons.

A.      **The Court Will Treat Plaintiff's Claims as Arising Under the APA**

First, the defendant argues that despite plaintiff's attempts to frame his action as arising under the APA, the fact that plaintiff requests damages capped at $10,000 invokes this Court's jurisdiction under the Little Tucker Act.  Def.'s Mot. to Dismiss 13–14.  The Little Tucker Act, 28 U.S.C. § 1346(a)(2), gives district courts concurrent jurisdiction with the Court of Federal Claims over any civil action against the United States for damages not exceeding $10,000. Defendant argues that since plaintiff requests damages in the form of "back pay and allowances" not exceeding $10,000, Compl. ¶¶ 5, (H), the plaintiff has availed himself of the Court's concurrent jurisdiction under the Little Tucker Act, Def.'s Mot. to Dismiss 14.  Therefore, exclusive appellate jurisdiction for the entire action would rest in the Federal Circuit; and, applying the law of the Federal Circuit, plaintiff's action would be time-barred.  *See* Def.'s Mot. to Dismiss 14–15.

The Court concedes that Circuit precedent on this issue is not completely clear.  The Court finds guidance from Judge Walton's opinion in *Martin v. Donley*, 886 F. Supp. 2d 1.  Like the present case, Martin's complaint cited the APA—not the Little Tucker Act—and included a similar waiver of "any right or entitlement to recover monetary damages greater than $10,000 in this action."  *Id.* at 9.  As in this case, the defendant claimed this waiver availed the Court of its

jurisdiction under the Little Tucker Act and meant the action was time-barred under the precedent of the Federal Circuit.  Judge Walton provided an excellent and detailed analysis of the Court's jurisdiction to proceed under the APA, which this Court will not belabor here.  Judge Walton concluded:

> After carefully weighing the "relative importance of the [plaintiff's] monetary recovery," *Bublitz* [*v. Brownlee*], 309 F. Supp. 2d [1, 8 (D.D.C. 2008)], which, as noted, cannot exceed $10,000,…against the valuable equitable relief sought, the Court determines that the plaintiff's claims in this case are not "in essence" for money damages.  Thus, the plaintiff's claims are not predicated on the Tucker Act; rather, the plaintiff has pleaded APA claims, which the Court may review pursuant to its federal question jurisdiction.

*Id*. at 10.  Considering the similarities between this case and *Martin*, and the persuasiveness of Judge Walton's approach, this Court finds that Bates' claims are predicated on the APA and will consider the merits of his APA challenge.

**B.      Plaintiff's APA Challenge of the AFBCMR's Decision Cannot Prevail**

Plaintiff does not—and cannot, because of timeliness problems—directly challenge his discharge or Article 15 nonjudicial punishment.  Plaintiff is time barred from challenging any of the defendant's actions during 1999–2000 related to the AVIP and disciplining plaintiff for refusing to take the AVA.  Plaintiff may only challenge the AFBCMR's denial of plaintiff's record correction request.  *See Rempfer*, 538 F. Supp. 2d at 203–04 (service member who was discharged for refusing order to take anthrax vaccine cannot directly challenge discharge, as the action was brought more than six years after the date of the discharge; service member can only challenge the AFBCMR's denial of his corrections request).

**1.      *Under the APA, the Court Owes Significant Deference to the AFBCMR***

The Court must consider what deference it owes to the decision of the AFBCMR.  At times, plaintiff proceeds as if this Court can review, *de novo*, the Air Force's disciplinary actions.

However, the Court is several steps removed from those decisions. The issue is not whether the AVIP program, or the Air Force's order that plaintiff be immunized, was contrary to law. The issue is not whether the Air Force's actions in disciplining and discharging the plaintiff were arbitrary and capricious, or contrary to law. The only question is whether the AFBCMR acted in accordance with § 706 of the APA; the Court may not substitute its own judgment for that of the AFBCMR when the Board has come to a reasoned decision after considering all relevant factors.

While decisions of the AFBCMR are "reviewable under the APA," these decisions are reviewable by "an unusually deferential application of the 'arbitrary or capricious' standard." *Kries v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). The D.C. Circuit elaborated:

> Nominally, of course, the terms of § 706 of the APA apply alike to all agency actions subject to review thereunder. In practice, however, the question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute, or other source of law, constrains agency action. While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act "*when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.*, that there has been an error or injustice.
>
> The Secretary may, in other words, have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice. Drawing upon our own experience, we can readily envision the Secretary, for example, exercising his discretion not to correct an error upon which nothing turns by reason of mootness, lack of harm to the person in question, or inability by such correction to redress the harm claimed. Afield of our experience, we can imagine that the alteration of a record may correct one injustice only to commit another, or perhaps only to incur some other equally significant institutional cost. All such balancing of considerations is to be done by the Secretary, free of judicial second-guessing. Such determinations are well within his discretion.

*Id.* The Circuit concluded that while the Secretary's exercise of discretion to correct military records "is not to be utterly unreviewable," "[p]erhaps only the most egregious decisions may be

prevented under such a deferential standard of review." *Id*. at 1514–15.  The court's role is to determine whether the Secretary has "give[n] a reason [for his decision] that a court can measure, albeit with all due deference, against the 'arbitrary and capricious' standard of the APA." *Id*.

Accordingly, the Board's decision "need not be 'a model of analytic precision,'" but "[it] 'must minimally contain a rational connection between the facts found and the choice made.'" *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 163 (D.D.C. 2011) (quoting *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)).  In this way, the deferential standard ensures that a court does not "substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), or "supply a reasoned basis for the agency's decisions that the agency itself has not offered," *P.R. Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 850 (D.C. Cir. 1993) (internal citation omitted).  Rather, "the court…ensure[s] that the agency 'examined the relevant data and articulate[d] a satisfactory explanation for its action,'" *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 54 (D.D.C. 2005) (citing *Riley*, 10 F.3d at 850), by limiting its review to "the administrative record already in existence [and] not some new record made initially in the reviewing court," *Wilhelmus*, 796 F. Supp. 2d at 161; *see also Camp v. Pitts*, 411 U.S. 138 (1973).

### 2.    *The Court Cannot Grant Most of the Relief Requested by Plaintiff*

The Court cannot order much of the relief plaintiff requests.  The Court cannot order the Board to modify plaintiff's records to remove mentions of discipline and change his discharge status, Compl. ¶¶ (A)–(F); order "Special Selection Boards…to be held to determine Plaintiff's promotion eligibility," *id*. ¶ (G); or order the Board to credit plaintiff with back pay and allowances and allow plaintiff to complete Squadron Officer School and Air Command Staff College, *id*. ¶¶ (H), (I).  Even if the Court found that the AFBCMR's decision violated the APA,

the Court would vacate and remand the Board's decision; the Court would not tell the Board how to decide on remand. *See Kries*, 866 F.2d at 1512 ("The court would only require the Secretary, on remand, to explain more fully the reasoning behind his decision and…to apply the correct legal standard. The Secretary would remain free, following his reevaluation, to reaffirm his original determination[.]"); *Rempfer*, 538 F. Supp. 2d at 210 (while remanding decision of AFBCMR for failure to consider effect of *Doe v. Rumsfeld*, stating that the impact of *Doe* litigation on plaintiffs' "claims before the AFBCMR is not [clear]" and taking "no position on whether the AFBCMR ought consider itself bound by *Doe*'s legal and factual conclusions" when considering issue on remand).

### 3.    *The AFBCMR's Decision Did Not Violate the APA*

Reviewing the administrative record submitted by the AFBCMR, the Court finds that the Board offered a thorough, well-reasoned explanation of its denial of plaintiff's request. The Board weighed all relevant factors, including the *Doe* and *Rempfer* litigation cited by plaintiff, and responded to all of the plaintiff's salient arguments. *See* AR 2–13 (Record of Proceeding, AFBCMR). The Board solicited and relied on several detailed advisory opinions, which explored in greater detail the legal and factual basis of plaintiff's request. *See* AR 14–203 (documents AFBCMR considered). As the discussion in Part I.C. *supra* shows, the Board thoroughly considered all of plaintiff's arguments and provided a well-supported opinion. The Board's decision appears to be procedurally valid, and plaintiff has not shown that the process by which the AFBCMR came to its conclusion was unjust, arbitrary, or unlawful. Since the Board offered an exhaustive justification for its decision, the Court will not repeat all of the reasons the Board proffered. The Court, however, will address plaintiff's central arguments that the Board's decision is infirm.

18

Plaintiff argues that "clear, binding decisions in this jurisdiction [ ] unequivocally found that AVA was an investigational drug within the meaning of 10 U.S.C. § 1107 and that pre-2005 military orders to involuntarily inoculate service  members were illegal." Pl.'s Opp'n 24.  *Doe* litigation halted the AVIP from 2003 to December 2005 because Judge Sullivan found the AVA was an investigational drug under 10 U.S.C. § 1107.  *Doe I*, 297 F. Supp. 2d at 16.  In *Rempfer v. AFBCMR*, Judge Robertson vacated and remanded a denial of a records correction request because the Board did not consider the effect of *Doe*.  538 F. Supp. 2d at 210.  Plaintiff argues that, taken together, *Doe* and *Rempfer* hold that it was illegal before 2005 to order any service member to take the anthrax vaccine.  The Board's failure to follow clear and binding precedent, plaintiff argues, means the Board's decision was arbitrary, capricious, and contrary to law.

Contrary to plaintiff's protestations, *Doe* is not "binding" on the AFBCMR.  The *Doe* litigation only awarded prospective, injunctive relief—not any declaratory relief or damages.  It did not discuss whether prior orders to take the anthrax vaccine were illegal.  *See Doe I*, 297 F. Supp. 2d at 16.  The D.C. Circuit did not affirm the reasoning of *Doe*—the Circuit mooted the appeal because a final, procedurally-valid FDA rule found the AVA safe and efficacious, and the Circuit explicitly declined to opine on whether *Doe* was decided correctly.  *Doe IV*, 172 Fed. Appx. at 172 ("Although the parties still dispute whether AVA's original 1970 license takes it outside the definition of 'drug unapproved for its applied use' within the meaning of 10 U.S.C. § 1107(g)(2), resolving that issue would have no practical effect on the now-dissolved injunction, and we have no power to decide questions that cannot affect the rights of litigants in the case before us." (internal quotation marks omitted)).

Plaintiff argues that the AFBCMR improperly relied on the Court of Military Appeal's *Kisala* decision, which held that military orders to take the AVA were legal, despite the *Doe*

litigation.  *See* Pl.'s Opp'n 27–32; AR 185 (discussing *Kisala*, 64 M.J. at 53–54).  While the Board may not have been *required* to follow *Kisala*'s reasoning, it was not required to follow *Doe* either.  Several courts have come to different conclusions regarding the legality of the AVIP and military orders to be inoculated.  *See*, *e.g.*, *Mazares*, 302 F.3d at 1385; *O'Neil*, 76 F. Supp. 2d at 645.  The AFBCMR considered this conflicting authority and came to a reasoned decision to follow *Kisala*.  *See*, *e.g.*, AR 9–11, 166–67, 187–96.  Since a decision of a federal district court does not necessarily "trump" a decision of the Court of Military Appeals, it was not arbitrary or capricious for the Board to find *Kisala*'s reasoning more persuasive.

Although *Doe* does not directly speak to the legality of the AVIP prior to 2005, the plaintiff relies heavily on *Rempfer* to argue that the 1999 order was illegal.  *See*, *e.g.*, AR 14–15, 185.  Plaintiff repeatedly quotes the following language:

> Taken as a whole, Judge Sullivan's decisions in *Doe v. Rumsfeld* conclude that, prior to the FDA's December 2005 rulemaking, it was a violation of federal law for military personnel to be subjected to involuntary AVA inoculation because the vaccine was neither the subject of a presidential waiver nor licensed for use against inhalation anthrax.

*Rempfer v. AFBCMR*, 538 F. Supp. 2d at 210.  The plaintiff's use of *Rempfer* is borderline disingenuous.  Directly following the above-quoted language, *Rempfer* continued:

> While the undisturbed factual and legal findings of the *Doe* litigation are clear, their impact on [plaintiffs'] claims before the AFBCMR is not.  Other courts have affirmed the legality of pre–2005 orders subjecting military personnel to involuntary anthrax vaccination, although they did so without giving detailed consideration to the implications of the FDA's licensing requirements.

> On remand, the Board must reach the issue and explain its conclusions about the merits of plaintiffs' constructive discharge claims and their accompanying demands for compensatory relief.  This Court does not assume that the AFBCMR must necessarily pass on the legality of pre–2005 involuntary AVA vaccination in order to decide plaintiffs' constructive discharge claims.  Should the Board address that underlying question on remand, this Court takes no position on whether the AFBCMR ought consider itself bound by *Doe*'s legal and factual conclusions.

*Id.* (citations omitted).  *Rempfer* only found that the AFBCMR needed to consider *Doe*—not that the Board needed to agree with *Doe*.  In the present case, the AFBCMR considered *Doe*, weighed it against contrary authority, and concluded that it was not "bound by *Doe*'s legal and factual conclusions."  *Id*.  The Court can only make sure that the Board considered all relevant factors; it cannot require the Board to follow *Doe*'s reasoning rather than *Kisala*'s.

As discussed *supra*, this case is almost identical to *Martin v. Donley*.  In that case, Judge Walton rejected an APA challenge to the AFBCMR's denial of plaintiff's request to change his discharge classification.  As in this case, Martin was disciplined for failing to obey an order to be inoculated under the AVIP.  And as in this case, Martin later claimed that the inoculation order was illegal under *Doe v. Rumsfeld*.  Judge Walton decided that the defendant was entitled to summary judgment on plaintiffs' APA claims, stating:

> [T]he Court is not persuaded that the Board for Correction acted arbitrarily or capriciously in concluding that "the order to submit to the vaccination program was not illegal," and that it should "defer to the Court of Appeals for the Armed Forces in [*United States v. Kisala*, 64 M.J. 50 (2006)]." Def.'s Mem. at 10.  The parties agree, and the Administrative Record is clear, that before the Board for Correction made its final ruling it sought the recommendations of nine advisory opinions from various offices in the Air Force, as well as from the Air Force Administrative Law Division. Compl. ¶ 47, 59; *see also* Def.'s Mem. at 10; A.R., Ex. A (May 13, 2010 R. of Proceedings) at 10–11.  After consulting these opinions, the Board for Correction decided not to second-guess the military court's decision on a "basic legal issue" of military justice. A.R., Ex. A (May 13, 2010 R. of Proceedings) at 10–11.  In the alternative, the Board for Correction concluded that even if it were to undertake its own review of the legality of the vaccination program order it was "not convinced the order was illegal." *Id*. at 11.  The Board for Correction then gave several justifications for why it would not invalidate the order, relying heavily on the analysis in the advisory opinions. *Id*.  A reasoned decision is certainly not the type of "egregious decision[ ]" the Court should undo. *See Kreis*, 866 F.2d at 1515.  In fact, the Court finds that the Board for Correction's decision is supported by substantial evidence. *See Kight v. U.S.*, 850 F. Supp. 2d 165, 168–69, 174–75 (D.D.C. 2012) (setting forth standard of review requiring determination only whether conclusion is supported by substantial evidence); *Walker v. Shannon*, 848 F. Supp. 250, 255 (D.D.C. 1994).  Because a review of the Board for Correction's decision is not intended to

> "reweigh[]…the evidence," *id.*, and because the deferential standard of review prohibits a court from "substitut[ing] its judgment for that of the [Board for Correction]," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, the Court is satisfied that the Board for Correction's decision sufficiently contains a "rational connection between the facts…and the choice made," *Dickson*, 68 F.3d 1396.

*Martin*, 886 F. Supp. 2d at 11–12.  This Court finds the rationale of *Martin* persuasive, and its facts—in all relevant regards—indistinguishable.  Therefore, the Court will follow Judge Walton's lead and grant defendant summary judgment on plaintiff's APA challenge.

## IV.  CONCLUSION

This case is not about whether the Air Force conducted its immunization program in accordance with the law.  It is not about whether the vaccine used was properly licensed for protection against inhalation anthrax exposure.  It is not even about whether the Air Force properly disciplined Mr. Bates for refusing to comply with an order to take the anthrax vaccine.

Like the plaintiffs in *Doe v. Rumsfeld*, Mr. Bates could have requested an injunction against the Air Force's vaccine program, had he thought it contrary to law.  Mr. Bates could have, within the six-year statute of limitations, directly challenged his discipline and discharge under the Administrative Procedure Act.

Instead, Mr. Bates waited eight years to ask the Air Force Board for the Correction of Military Records to change his records and effectively "undo" the effects of his earlier discipline.  After thorough consideration, the Board exercised its discretion to decline Mr. Bates' request.  Mr. Bates then challenged that denial to this Court under the APA.

Therefore, this case is only about whether the AFBCMR violated the requirements of the APA in denying Mr. Bates' request.  In this posture, the Court defers strongly to the informed judgments of the Board and does not simply displace the Board's judgments in favor of its own.  The only pertinent question is whether the Board's action was arbitrary, capricious, unsupported

by substantial evidence, or contrary to law.  The AFBCMR considered the appropriate factors and evidence and came to a reasoned decision.  The Court cannot disturb that decision simply because it could have decided differently.

My colleague, Judge Reggie Walton, recently resolved a case with strikingly similar facts and legal issues.  This Court finds Judge Walton's well-reasoned approach in *Martin v. Donley* persuasive and bases much of its current decision on how Judge Walton resolved *Martin*.

For the reasons stated above, the Court will convert defendant's Motion to Dismiss into a motion for summary judgment and grant the defendant summary judgment.  This constitutes final judgment in this action, and the Court will dismiss this case with prejudice.

A separate Order accompanying this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 27, 2013.